## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ANDREW LEE KNOX, | ) Case No. 3:25-CV-1174 |
| | ) |
| Plaintiff, | ) Judge Knepp |
| | ) Magistrate Judge Clay |
| v. | ) |
| | ) |
| HARDIN COUNTY MUNICIPAL COURT, | ) **DEFENDANTS JUDGE GREGORY** |
| *et al.* | ) **GRIMSLID'S MOTION TO DISMISS** |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

Comes now Defendant, the Honorable Judge Gregory Grimslid by and through counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby moves to dismiss Plaintiff Andrew Knox's claims against him. This motion is supported by the attached memorandum.

Respectfully submitted,

*/s/ Cooper D. Bowen*
LINDA L. WOEBER (0039112)
COOPER D. BOWEN (0093054)
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
513.768.5239 / lwoeber@mojolaw.com
513.768-5242 / cbowen@mojolaw.com

*Counsel for Defendant Judge Gregory Grimslid*

1

## Certification Pursuant to Local Rule 7.1

I certify that this case has not been assigned to a track, and the above memorandum in support complies with the page limitations set forth in Local Rule 7.1.

*/s/ Cooper D. Bowen*
COOPER D. BOWEN (0093054)

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July, 2025, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I also certify that the foregoing was served by electronic and Ordinary U.S. Mail upon the following:

Andrew Lee Knox
P.O. Box 344
Russells Point, Ohio 43348
Knox.andrew19@gmail.com
*Plaintiff*

*/s/ Cooper D. Bowen*
COOPER D. BOWEN (0093054)

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ANDREW LEE KNOX, | ) Case No. 3:25-CV-1174 |
| | ) |
| Plaintiff, | ) Judge Knepp |
| | ) Magistrate Judge Clay |
| v. | ) |
| | ) |
| HARDIN COUNTY MUNICIPAL COURT, | ) **DEFENDANTS JUDGE GREGORY** |
| *et al.* | ) **GRIMSLID'S MEMORANDUM IN** |
| | ) **SUPPORT OF THE MOTION TO** |
| Defendants. | ) **DISMISS** |
| | ) |
| | ) |

## I.      Introduction and Factual Allegations

In his Amended Complaint (Doc. 15), Plaintiff Andrew Lee Knox ("Knox") brings claims against Judge Gregory Grimslid, the Hardin County Municipal Court, Clerk of Courts Emily Kissling, and Prosecutor Andrew Tudor. Knox's claims stem from a traffic action in the Hardin County Municipal Court – Case No. TRD2501241 – over which Judge Grimslid initially presided (the "Underlying Case"). A true and accurate copy of the docket from Case No. TRD2501241 is attached hereto as Exhibit A.[1]

In his Amended Complaint, Knox alleges that on May 17, 2025, he was issued a traffic citation for a window tint (Am. Complt., Doc. 15, PageID#: 118, ¶ 14). A hearing was set for May 27, 2025, and on May 21, 2025, Knox alleges he contacted the Court by telephone using an American Sign Language (ASL) interpreter service and requested an ASL interpreter for his upcoming Court date (Id., ¶ 15). He was informed that the Court

---

[1] This Court is entitled to take judicial notice of facts appearing on a state court online docket. *See Lynch v. Leis*, 382 F. 3d 642, 647, n.5 (6th Cir. 2004).

1

does not accept accommodation requests via phone and he could make the request in person (Id., ¶ 16). Knox felt this requirement infringed upon his rights under the ADA and contacted the Ohio Supreme Court Language Services Section to relay his concerns (Id., PageID#: 119, ¶ 17). Knox alleges that the representative he spoke with contacted the Court, who still refused to accept the request over the phone (Id.).

On May 27, 2025, Knox alleges he appeared for his hearing, and requested an ASL interpreter, which he was informed would happen in Court (Id., PageID#: 120, ¶ 18). During the hearing, Knox alleges a Court employee attempted to assist him with a phone-based app, but he was not appointed an official interpreter for the hearing (Id., ¶ 19). He then alleges he communicated with Judge Grimslid through the phone-based app, and that Judge Grimslid stated no interpreter had been arranged because this was a minor (traffic) matter (Id.). However, Judge Grimslid then continued the hearing and issued an order that an ASL interpreter would be appointed (Id.; *see also*, Order of Continuance, attached hereto as Exhibit B).

In the interim, Knox sent a "complaint" to the Municipal Court and the Hardin County Prosecutor's Office regarding the issue at the May 27th hearing (Id., PageID#: 121, ¶ 21). The "complaint" proposed a resolution to his issues, including a monetary settlement, a formal acknowledgement of the violation, ADA training for Municipal Court staff, and implementation of new ADA policies (Id.; Plaintiff's Exhibit K, Doc. 9-7, PageID#: 73-75). Knox alleges he received a response from Judge Grimslid stating the Judge had no response to the proposal (Am. Compl., Doc. 15, PageID#: 121, ¶ 21). Judge Grimslid then recused himself from the matter based upon the complaint (Id., ¶ 22).

Though not fully alleged in the Complaint, Knox's hearing was rescheduled for June 2, 2025, and the docket reflects he waived a defense and was issued a fine for his

2

charge, ending the traffic proceedings subject to payment of the fine. A true and accurate copy of the June 2, 2025, Entry is attached hereto as Exhibit C.

Knox's claims are based on the denial of the ASL interpreter at the May 27th hearing, and his disagreement with the Municipal Court's policies related to disability accommodation requests. Knox brings claims pursuant to the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, 42 U.S.C. 1983, and O.R.C. 4112.02(G) for violations of civil rights related to a failure to accommodate his disability. Knox seeks relief in the form of a declaratory judgment that his rights were violated, injunctive relief in the form of the Court revising its policies, compensatory damages, attorneys' fees, costs, and other equitable relief.

## II.    Standard of Review

Rule 12(b)(6) authorizes this Court to dismiss claims for "failure to state a claim upon which relief can be granted." In deciding a motion under these rules, this Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Knox's Amended Complaint should be dismissed because: (1) Knox has failed to state a claim under the ADA or the Rehabilitation Act; (2) Knox's claims under the ADA and the Rehabilitation Act are moot; (3) Knox's claim under 42 U.S.C. § 1983 and O.R.C.

3

4112.02(G) against Judge Grimslid in his official capacity are barred by Eleventh Amendment sovereign immunity; and (3) Judge Grimslid is entitled to absolute judicial immunity in his personal capacity from Knox's claims for monetary damages, injunctive relief, and declaratory relief.

## III.    Argument

### A. Knox Has Not Stated a Claim Under the ADA or the Rehabilitation Act

Knox's Amended Complaint identifies Judge Grimslid in his official capacity.[2] Title II of the ADA states that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation or denied the benefits of the services, programs or activities of a public entity." 42 U.S.C. § 12132.  The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

In order to prove a public program or service violates Title II of the ADA, a plaintiff must show:  1) that he is a qualified individual with a disability; 2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and 3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. See 42 U.S.C. § 12132; see also *Barrilleaux v. Mendocino County*, 61 F.Supp. 3d 906, 915 (N.D. Cal. 2014), citing *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d

---

[2] To the extent Knox brings claims against Judge Grimslid in his personal capacity, the Sixth Circuit has repeatedly held that the ADA and the Rehabilitation Act do not permit public officials to be sued in their individual capacities. Williams v. McLemore, 247 F. App'x 1, 8 (6th Cir. 2007) (no individual liability under the ADA); Hiler v. Brown, 177 F.3d 542, 546-47 (6th Cir. 1999) (no individual liability under the Rehabilitation Act).

976, 978 (9th Cir. 1997). The same standard applies to a plaintiff who seeks to establish a claim under section 504 of the Rehabilitation Act, in addition to showing the program receives federal funding. See *Center v. City of W. Carrollton*, 227 F. Supp. 2d 863, 867 (S.D. Ohio 2002) and *Davis v. Flexman*, 109 F. Supp. 2d 776, 785 (S.D. Ohio 1999).

Despite Knox's allegations, the record from the Underlying Case demonstrates conclusively that Knox was not excluded from participation in, nor was he denied the benefits of, the Municipal Court's services, programs, or activities. Instead, after considering Knox's request for an ASL interpreter, Judge Grimslid continued the matter so that an interpreter could be appointed.

The Supreme Court in *Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), upheld the constitutionality of Title II against Eleventh and Fourteenth Amendment claims. The Court cautioned nevertheless that "Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs." *Id*. at 531-32, 124 S.Ct. 1978. *Bedford v. Michigan*, 722 F. App'x 515, 516 (6th Cir. 2018).

As quoted in the introduction to the opinion, the Supreme Court in *Lane* cautioned that Title II requires only "reasonable modifications that would not fundamentally alter the nature of the service provided," not "to employ any and all means to make judicial services accessible to persons with disabilities." *Id*. at 531–32, 124 S.Ct. 1978 (internal quotation marks omitted). *Bedford v. Michigan*, 722 F. App'x 515, 519 (6th Cir. 2018).

The Justice Department's commentary on the regulations further states that a public entity "shall honor the choice" of auxiliary aid or service expressed by the person with disabilities, "unless it can demonstrate that another effective means of

5

communication exists or that use of the means chosen" would fundamentally alter the program, service, or activity of the public entity at issue, or would create an undue financial or administrative burden. 28 C.F.R. part 35, App. A; *see also* 28 C.F.R. § 35.164 (standard of fundamental alteration or undue financial or administrative burden).

> Of import here, the commentary also states:

> Although in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex, or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication.

*Center v. City of W. Carollton*, 227 F.Supp. 2d 863, 868 (S.D. Ohio 2002), citing 8 C.F.R. part 35, App. A.

However, an analysis of whether Knox's requested auxiliary aid would have placed an undue burden on the Municipal Court is unnecessary because it is undisputed from the record in the Underlying Case that Judge Grimslid did order an ASL interpreter be provided, which was the *exact* auxiliary aid or service requested by Knox. To the extent that other auxiliary aids were utilized during Knox's first appearance on May 27, 2025, the commentary to the regulations does not prohibit such means, particularly in this instance where Judge Grimslid did not make any findings as to the violations against Knox and did not address any substantive matters during that first appearance.

To that end, Knox's Amended Complaint alleges that the failure to provide an ASL interpreter prior to or during this initial hearing violated his due process rights, specifically his right of access to the courts. For criminal defendants like Knox, the Due Process Clause of the Fourteenth Amended has been interpreted to provide that "an

6

accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Lane v. Tennessee*, 315 F.3d 680, 682 (6th Cir. 2003), citing *Faretta v. California*, 422 U.S. 806, 819 n.15, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975). To successfully make out a procedural due process claim, a plaintiff must allege: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)

Here, Knox was not denied his right to be present at any stage of the proceedings as an ASL interpreter *was* appointed for him prior to any findings, plea, or fine. Further, while he contends that Judge Grimslid and the Municipal Court should be required to accept accommodation requests over the phone, he cites no authority demonstrating that the ADA, the Rehabilitation Act, or the regulations surrounding these acts strictly require such a procedure.[3] Neither 28 CFR § 35.160 nor the ADA Technical Assistance Manual, which Knox cites in support of his allegations that accommodation requests be allowed over the phone or email, actually states that such services are required, and instead speak only to the auxiliary services required, not the means those services are requested.[4]

Knox was appointed an interpreter, the exact service he requested, and subsequently waived a defense and was issued a fine for the traffic violation. He does not

---

[3] Likewise, Ohio Rule of Superintendence 88(B) only requires a sign language interpreter be appointed upon request and that a court should give primary consideration to the method of interpretation requested by the party, but does not proscribe how the court must accept the request.

[4] ADA Technical Assistance Manual, Section II-3.6200 states: "A public entity is not required to provide individuals with disabilities with personal or individually prescribed devices, such as wheelchairs, prescription eyeglasses, or hearing aids, or to provide services of a personal nature, such as assistance in eating, toileting, or dressing. Of course, if personal services or devices are customarily provided to the individuals served by a public entity, such as a hospital or nursing home, then these personal services should also be provided to individuals with disabilities."

allege in the Amended Complaint that he lacked understanding of the charge against him or the procedural requirements due to the lack of interpreter at the first hearing.

For example, in *Tucker v. Tennessee*, 539 F.3d 526 (6th Cir. 2008), two of the plaintiffs were deaf and mute, and were arrested for various charges. *Id.* at 528-530. Amongst a variety of claims, the plaintiffs brought claims under the ADA and the Rehabilitation Act for the failure to provide an interpreter at their initial hearing. *Id.* at 540. The presiding judge offered to continue the matter so an interpreter could be appointed, but the right to an interpreter was waived, and one of the plaintiffs entered a guilty plea by writing on a form provided by the court. *Id.* The plaintiffs later brought the claims for a lack of an interpreter, but the Sixth Circuit affirmed dismissal of these claims based upon the plaintiffs' waiver of the right, as well as the fact the plaintiffs failed to prove there was any confusion as to what was happening during the court proceedings. *Id.* at 541. The Sixth Circuit further stated that the ADA does not require a public entity to meet a disabled person's exact requests, but "[w]hat is required by the ADA [...] is an alternative which allows disabled persons to communicate as effectively as a non-disabled person." *Id.* Indeed, the ADA and its regulations "do not give a deaf individual an absolute right to an interpreter," and Knox identifies no support for the idea that such a right exists. *Shaffer v. City of Columbus*, 444 F. Supp. 3d 872, 880-881 (S.D. Ohio 2020) Rather, ADA regulations only require "appropriate auxiliary aids and services where necessary to afford individuals with disabilities" equal access. 28 C.F.R. § 35.160(b)(1) (2020). "The type of auxiliary aid or service necessary to ensure effective communication will vary" according to the circumstances at issue. *Id.* § 35.160(b)(2). Examples of appropriate auxiliary aids and services include "written materials," "exchange of written notes," "voice, text, and video-based telecommunications products

8

and systems," or "or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." *Id.* § 35.104(1).

The same holds true here, where Knox does not allege there was any confusion in the proceedings or that the means of communication was ineffective and, in contrast to *Tucker*, no actual decisions or actions affecting his rights occurred during the initial hearing. Indeed, Knox alleges he communicated with Judge Grimslid during the initial hearing through a phone-based note application but does not indicate he was unable to understand the communication, or the rights expressed to him through that communication (Am. Compl., Doc. 15, PageID#: 120, ¶ 19). Moreover, the judge in *Tucker* offered to continue the case so an interpreter could be provided, and nothing in the decision indicates that would have resulted in a due process violation, even when it would have resulted in the plaintiffs in *Tucker* remaining in jail longer, which is not the case for Knox, who merely appeared pursuant to a citation without incarceration.

Regardless, as Knox was provided with the auxiliary service he requested, his allegations that Judge Grimslid and the Municipal Court lacked ADA policies or training he believes should be in place does not support a claim for violation of the ADA. See, *Deck v. City of Toledo*, 76 F. Supp. 2d 816, 823 (N.D. Ohio 1999) ("Plaintiffs have presented nothing that would indicate to this Court that . . . failure to have policies and procedures designed to ensure compliance with the ADA could constitute a violation of ADA for which they are entitled to redress."); *Smith v. Loeb Bros. Realty, L.P.,* No. 2:21-cv-2428-SHL-cgc, 2022 U.S. Dist. LEXIS 252252 (W.D. Tenn. July 1, 2022) ("Plaintiff's reliance on the absence of an ADA compliance policy offered by Defendant is insufficient" to support a claim under the ADA); *Bowie v. Hamilton Cty. Juvenile Court,* 2021 U.S. App. LEXIS 1581, *7 ("[Plaintiff-Appellant] cannot bring a claim under Title II of the ADA simply

because the Juvenile Court lacked a designated coordinator or a grievance procedure."); *Dillary v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) (Allegations defendants failed to train its employees about the ADA affects all disabled persons, and does not support that the defendant intentionally discriminated against the plaintiff specifically by failing to undertake these actions).

As Knox was provided with his requested auxiliary service, and cannot establish his due process rights were violated, his claims under the ADA and Rehabilitation should be dismissed.

### B.  Knox's Claims under the ADA and the Rehabilitation Act are Moot

Even if the initial response from the Court could be viewed as a violation of the ADA or the Rehabilitation Act, as Judge Grimslid remedied the alleged violation by appointing an interpreter, Knox's claims are moot. "To uphold the constitutional requirement that federal courts hear only active cases or controversies, as required by Article III, section 2 of the federal constitution, a plaintiff must have a personal interest at the commencement of the litigation (standing) that continues throughout the litigation (lack of mootness)." *Barry v. Lyon*, No. 15-1390, 834 F.3d 706, 2016 U.S. App. LEXIS 15671, 2016 WL 4473233, at *4 (6th Cir. Aug. 25, 2016) (internal citations omitted). "Standing is a threshold question in every federal case." *Id.* "Plaintiffs have standing if they suffer a 'concrete,' 'particularized,' and 'actual' or 'imminent' injury that is caused by a defendant's conduct and is likely to be 'redressed by a favorable decision." *Id.* "If the plaintiff ceases to have standing such that a live case or controversy no longer exists, the case becomes moot." *Id.*, at *5.

ADA Title II claims, and by extension the analogous Rehabilitation Act claims, are moot when a "defendant has presented evidence that it remediated

the ADA violations identified in the complaint." *Mosqueda v. Family Dollar Stores of Mich., LLC,* 592 F. Supp. 3d 616 (E.D. Mich. 2022); See also, *Dowling v. Macmarin, Inc*., 156 F.3d 1236, 1236 & n.1 (9th Cir. 1998) (holding that being "fully in compliance with the ADA" due to "recent renovations" renders an ADA claim moot); *Kennedy v. Omegagas & Oil, LLC*, 748 F. App'x 886, 891 (11th Cir. 2018) (unpublished) (per curiam) (holding that a defendant's remediation of an ADA violation renders the plaintiff's "complaint as to th[e] noncomplaint features moot"); *Boitnott v. Border Foods, Inc*., 361 F. Supp. 3d 858, 858 (D. Minn. 2019) (citing ADA § 302, 42 U.S.C.A. § 12182(a)); *Bacon v. Walgreen Co.,* 91 F. Supp. 3d 446, 451-53 (E.D.N.Y. 2015); *Sharp v. Rosa Mexicano, D.C., LLC,* 496 F. Supp. 2d 93, 97-99 (D.D.C. 2007).

Here, Judge Grimslid remediated the alleged ADA violation at issue, the failure to appoint an interpreter, by appointing an interpreter; further, Knox ultimately waived his defense and was issued a fine. S*ee*, Ex B and C. As such, Knox no longer has an interest in the outcome of these proceedings. *See, County of Los Angeles v. Davis*, 440 U.S. 625, 625, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979) ("[B]ecause neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law," Plaintiff's ADA claim is moot).

Knox cites to *Sheely v. MRI Radiology Network, P.A*., 505 F.3d 1173 (11th Cir. 2007), for the proposition that "post-hoc remedial measures do not moot ADA claims where the plaintiff experienced harm from the original denial." (Am. Compl. Doc. 15, PageID#: 124, ¶ 25. However, the *Sheely* court went on to note that, "A case *might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur*." *Id.* at 1184 (internal citations omitted, emphasis in original).

11

Again, Knox was appointed an interpreter, and it is absolutely clear that the alleged wrongful behavior could not be reasonably expected to occur, because there is no allegation that Judge Grimslid and the Municipal Court have a practice or policy not to appoint interpreters upon request.[5] And as set forth, *supra*, Knox's allegations about the Municipal Court's ADA policies, or alleged lack thereof, do not support a claim.

Because Knox was appointed an interpreter, his case has been resolved, and there is no clear indication the Municipal Court does not appoint interpreters when requested, his claims are moot and should be dismissed.

### C. Judge Grimslid has sovereign immunity for Plaintiff's official capacity claim pled against him.

Judge Grimslid is also entitled to sovereign immunity under the Eleventh Amendment for Knox's claim arising under 42 U.S.C. § 1983 and O.R.C. § 4112.02(G). Knox's Amended Complaint purports to bring claims against Judge Grimslid in his official capacity, which means they are claims against the entity Judge Grimslid represents—the Municipal Court. As set forth below, the Hardin County Municipal Court is an arm of the State; therefore, the claims against Judge Grimslid in his official capacity are precluded by sovereign immunity.

Unless a State consents to be sued, it enjoys immunity from private lawsuits seeking damages. *Ermold v. Davis*, 936 F.3d 429, 433, 2019 U.S. App. LEXIS 25302, citing U.S. Const. amend. XI; *Crabbs v. Scott*, 786 F.3d 426, 428 (6th Cir. 2015). And because lawsuits against state officials in their official capacities equate to lawsuits against the State itself, sovereign immunity shields state officials as well. *Id*., citing *Kentucky v.*

---

[5] Knox also cites *J.D. v. Colonial Williamsburg Found*, 925 F.3d 663, 673 (4th Cir. 2019), which he states sets forth that "A later accommodation does not erase the discrimination already suffered." However, counsel for the undersigned cannot locate this citation in the opinion, and the opinion as a whole does not address later accommodations provided to the plaintiff in that case.

12

*Graham*, 473 U.S. 159, 165–66 (1985).

Ohio law consistently treats an official capacity claim by or against an official of an Ohio court as a suit against the State—not by or against the court he or she serves. See, *Ward v. City of Norwalk,* 640 Fed. Appx. 462, 464-465 (6th Cir. 2016); *Hoskins v. Hamilton County Juvenile Court,* S.D. Ohio No. 1:18-cv-305, 2019 U.S. Dist. LEXIS 135631, at * 19 (Aug. 12, 2019)(finding an official capacity claim against a Juvenile Court judge in his official capacity is a claim against the State, meriting sovereign immunity when raised in federal court); *see also Godfrey v. Hamilton Cty. Juv. Ct.*, S.D. Ohio No. 1:18-cv-663, 2019 U.S. Dist. LEXIS 119930 (Jul. 18, 2019)(Juvenile Court judge being sued in his official capacity is protected by sovereign immunity); *Hunter v. Hamilton County*, S.D. Ohio No. 1:15-cv-540, 2016 WL 11463840, 2016 U.S. Dist. LEXIS 125623, at *8, 18 (May 5, 2016) (Report and Recommendation)("[A] suit against Judge Myers in her official capacity is a suit against the state of Ohio.")*, adopted* at 2016 U.S. Dist. LEXIS 125621, 2016 WL 4836810 (S.D. Ohio Sept. 15, 2016)(*citing Hafer v. Melo*, 502 U.S. 21, 25-26 (1991); *Smith v. Grady,* 960 F.Supp.2d 735, 752 (S.D. Ohio 2013). The same holds true for Knox's claims for declaratory relief, as the Eleventh Amendment generally "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993). And, as set forth below, Knox's claims for injunctive relief do not satisfy the *Ex parte Young* exception to immunity.

Knox's 42 U.S.C. § 1983 and O.R.C. 4112.02(G) claims against Judge Grimslid, in his official capacity, are claims against an arm of the State of Ohio—the Hardin County Municipal Court—which is the same as a claim against the State itself; therefore, Judge Grimslid is entitled to sovereign immunity and these claims against him must be

13

dismissed.

### 1. The *Ex parte Young* exception to sovereign immunity does not apply to Knox's claims for injunctive relief.

In *Ex parte Young*, the United States Supreme Court held that the Eleventh Amendment did not bar a suit alleged against a state official, in his official capacity, for prospective injunctive relief, thereby carving out a narrow exception to sovereign immunity. *Ex parte Young*, 209 U.S. 123, 150-156, 28 S. Ct. 441, 52 L. Ed. 714 (1908). In order for this exception to apply, a plaintiff's claim must "seek prospective relief to end a continuing violation of federal law." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). Claims seeking retroactive, monetary relief are barred by the Eleventh Amendment and not subject to the *Ex parte Young* exception. *Id.*

To evaluate whether the *Ex parte Young* doctrine applies, the Court need only look to the allegations in the complaint, not the merits of the claim. *Bedford v. Kasich*, No. 2:11-cv-351, 2011 U.S. Dist. LEXIS 51903 at *24 (S.D. Ohio 2011) (citing *Verizon MD. Inc. v. United States*, 535 U.S. 635, 646, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2001)). Courts have justified the *Ex parte Young* exception as a necessary means "to permit the federal courts to vindicate *federal* rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)(emphasis added) (quoting *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)). Thus, when no *federal* interests are implicated, "the entire basis for the doctrine of *Young*...disappears." *Id.* at 106 (holding the *Ex parte Young* exception did not apply to claims "against state officials on the basis of state law").

Consequently, all claims involving a state official's non-compliance with state law, whether retrospective or prospective, are barred by the Eleventh Amendment. *Pennhurst*

14

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); *see also Ohioans Against Corp. Bailouts, LLC v. LaRose*, 417 F. Supp. 3d 962, 975-76 (S.D. Ohio Oct. 23, 2019) ("A claim that a state official violates state law in carrying out his or her official duties is a claim against the state, which is barred by the Eleventh Amendment, depriving a federal court of jurisdiction to hear the matter."); *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) ("[B]ecause the purposes of *Ex parte Young* do not apply to a lawsuit designed to bring a State into compliance with state law, the State's constitutional immunity from suit prohibits all state-law claims filed against a State in federal court, whether those claims are monetary or injunctive in nature."); *see also Derezic v. Ohio Depot of Educ.*, No. 2:15-xc-51, 2014 U.S. Dist. LEXIS 118163, *9-10 (S.D. Ohio 2014). Thus, Knox's claim under O.R.C. § 4112.02(G) against Judge Grimslid in his official capacity is absolutely barred pursuant to sovereign immunity.

Notwithstanding the above, even if a plaintiff has pled a violation of federal law, whether a Court has jurisdiction to consider a plaintiff's constitutional due process and equal protection claims under *Ex parte Young* depends on whether the claim: (1) is asserted against a state official in his official capacity; (2) seeks prospective injunctive or declaratory relief and (3) concerns a continuing violation of federal law. If a plaintiff fails to meet any of these three requirements, the *Ex parte Young* exception will not apply and the general rule—sovereign immunity—will divest the Court of jurisdiction to consider their due process claim. *Derezic v. Ohio Dep't of Educ.,* No. 2:14-cv-51, 2014 U.S. Dist. LEXIS 118163, *11-12 (S.D. Ohio 2014). Here, Knox's claims for monetary relief clearly do not satisfy the *Ex parte Young* exception and are thus barred. The Court must then look to the remaining requests for relief to determine whether they, too, are barred by the Judge's sovereign immunity.

15

Knox seeks injunctive relief in the form of an order requiring Judge Grimslid and the Municipal Court to accept accommodation requests via the requested means, publicly post ADA procedures, provide annual training, and designate an ADA coordinator (Am. Comp., Doc. 15, PageID#: 129). To the extent Knox, in essence, asks the Court to instruct Judge Grimslid to "obey the law," this is precisely the type of sovereign invasion that "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Derezic* at *11*, citing Pennhurst*, 465 U.S., at 106; *see also*, *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013) ("An injunction that does no more than order a defeated litigant to obey the law raises several concerns. One is overbreadth. An obey-the-law injunction departs from the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation").

Accordingly, the *Ex parte Young* exception does not apply to Knox's claims, and the Eleventh Amendment bars the Court from considering the 42 U.S.C. § 1983 claim.

### D. Judge Grimslid is entitled to judicial immunity from civil liability in his individual capacity.

To the extent Knox's Amended Complaint can be interpreted as bringing claims against Judge Grimslid in his individual capacity, it has long been established that judges are absolutely immune from individual liability for monetary relief for the performance of any "judicial act" unless there is a "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978); *King v. Love*, 766 F.2d 962, 966-67 (6th Cir.), *cert. denied*, 474 U.S. 971 (1985). This immunity will be lost only where a judge "knows he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction[.]" *Schorle v. Greenhills*, 524 F. Supp. 821, 828 (S.D. Ohio 1981). Such far-

reaching protection is justified by a "long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (*quoting Antoine v. Byers & Anderson*, 508 U.S. 429, 435 (1993)).

The Supreme Court and Sixth Circuit have renewed their support for an expansive reading of absolute judicial immunity. *See, Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 288-89 (1991) (immunity applicable to claims that a judge ordered court officers to use excessive force to drag an attorney into his courtroom); *Cooper v. Parrish,* 203 F.3d 937, 945-46 (6th Cir. 2000) (immunity applicable to claims a judge improperly engaged in *ex parte* contact with prosecutors and gave them legal advice on how to improve their case); *Barnes,*105 F.3d 1111 (immunity applicable to claims that a judge aided prosecutors in the preparation of a complaint against a criminal defendant in his courtroom). Thus, as one court noted, the "law has been settled for centuries that a judge may not be attacked for exercising his judicial authority, even if done improperly."[6] *Dean v. Shirer*, 547 F.2d 227, 230-32 (4th Cir. 1976), *citing Mullins v. Oakley*, 437 F.2d 1217, 1218 (4th Cir. 1971) (immunity applies to a judge's utterance of vile and slanderous statements to an attorney). The courts have further unequivocally held judicial immunity extends to claims a judge conspired with others to deprive a plaintiff of his property and rights. *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986); *Billingsley v. Kyser*, 691 F.2d 388, 389 (8th Cir. 1982).

---

[6] Judicial immunity extends to cases in which judges acted maliciously (*e.g., Pierson v. Ray*, 386 U.S. 547, 554 (1967)). It extends to cases in which a trial judge altered a transcript (*e.g., Eades v. Sterlinske*, 810 F.2d 723 (7th Cir.), *cert. denied*, 484 U.S. 847 (1987)); set allegedly inappropriate bond amounts (*King*, 766 F.2d at 968); failed to conduct a speedy trial (*Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976), *cert. denied*, 431 U.S. 905 (1977)); maliciously and for improper reasons initiated criminal proceedings against a person before him (*Harris v. Deveaux*, 780 F.2d 911, 915 (11th Cir. 1986)); and ordered a person detained for mental examination (*Turney v. O'Toole*, 898 F.2d 1470 (10th Cir. 1990)). The courts have unequivocally held judicial immunity extends to claims a judge conspired with others to deprive a plaintiff of his property and rights. *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986); *Billingsley v. Kyser*, 691 F.2d 388, 389 (8th Cir. 1982).

Judge Grimslid's immunity can only be overcome in two situations:

1. If he was acting in the complete absence of all jurisdiction, or

2. If his challenged actions were non-judicial.

*Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116.

### 1. Judge Grimslid's acts were within the general power of the court.

As long as Judge Grimslid was acting within his jurisdiction, he is immune. In *Stump,* the United States Supreme Court held a judge is subject to liability only if he acted in the clear absence of *all jurisdiction*. *Stump, supra,* at 356-57. And the scope of . . . [a] judge's jurisdiction must be construed broadly where the issue is . . . immunity . . ." *Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir. 1994), *quoting Stump at* 356. Even "[w]here a court has *some* subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Depiero v. City of Macedonia,* 180 F.3d 770, 785 (6th Cir. 1999) (*citing Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985)). The court in *Doe v. McFaul*, 599 F. Supp. 1421, 1431 (D. Ohio 1984) added:

> [A] judicial officer does not act in the clear absence of all jurisdiction if he merely acts in excess of his authority . . .. The Supreme Court has held, for instance, that if a judicial officer exceeds his authority in a type of case that he normally has jurisdiction to hear, the officer has not acted in the clear absence of all jurisdiction.

*See also Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

The distinction between acts performed in *excess* of jurisdiction and those done in the absence of *all* jurisdiction is this: A judge acts in excess of jurisdiction but indeed has jurisdiction for immunity purposes if the act complained of is within his general power of jurisdiction but is not authorized because of certain circumstances. *Duty*, 42 F.3d at 462.

The determinative fact is that the Hardin County Municipal Court, established

18

pursuant to Ohio Revised Code § 1901.01, had proper jurisdiction over the Underlying case. Under R.C. 1901.20(A)(1), municipal courts have "jurisdiction over the violation of any ordinance of any municipal corporation within its territory, including exclusive jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance." It is undisputed that the Hardin County Municipal Court and its judge have jurisdiction over traffic citations issued in Hardin County. Thus, Judge Grimslid had subject matter jurisdiction over the matter, and clearly acted within his jurisdiction by presiding over the Underlying Case. This matter is not appropriate for challenging that jurisdiction, and his immunity cannot be contested on this basis.

### 2. Judge Grimslid's acts were quintessentially judicial.

The remaining inquiry, then, is whether Judge Grimslid's actions were "judicial acts," and thus protected by his immunity. A "judicial act" has been defined as a function normally performed by a judge in a situation where the parties have dealt with the judge in a judicial capacity. *Stump,* 435 U.S. at 362*; King v. Love*, 766 F.2d 962 (6th Cir. 1985). Knox does not allege he dealt with Judge Grimslid in any capacity other than acting as a municipal court judge. His only claims relate to the Judge's actions in the Underlying Case. *See Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (per curiam) (holding that the plaintiff's claims against a state-court judge for alleged violations of the ADA and the Rehabilitation Act were barred by the doctrine of absolute judicial immunity); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (same); *Lloyd v. Doherty*, 2018 U.S. App. LEXIS 33324, *13-14 (6th Cir. 2018) (judge and magistrate preventing plaintiff from "bringing her service dogs with her into the courtroom during the state court proceedings—were acts that these defendants took in their official judicial capacities with proper jurisdiction").

19

While Knox's Amended Complaint references circumstances that occurred both before and outside of the proceedings, Judge Grimslid's actual involvement is limited to court proceedings, and there are no allegations he dealt with Judge Grimslid in any capacity other than acting as a municipal court judge during the Underlying Case. Likewise, Knox's allegation that Judge Grimslid recused himself from the Underlying Case after receiving a complaint from Knox does not demonstrate the judge acted improperly or otherwise engaged in misconduct. For example, the Ohio Supreme Court has held "it is well established that a judge's voluntary removal from an earlier case does not, by itself, support disqualification from an unrelated case involving that same party or attorney." *Gribble v. Misconin (In re Celebrezze),* 2012-Ohio-6304, ¶ 7.

Because Judge Grimslid's decisions in the Underlying Case were within the jurisdiction of the Hardin Conty Municipal Court and the acts upon which the Complaint is based were judicial in nature, Judge Grimslid is entitled to absolute judicial immunity.

### E. Judge Grimslid's Absolute Judicial Immunity Precludes Claims for Injunctive Relief.

Like claims for money damages, absolute judicial immunity shields judges from claims for injunctive relief as well. The Federal Court's Improvement Act of 1996 (Public Law 104-317, October 19, 1996) amended 42 U.S.C. § 1983 to provide a judge may not be enjoined for any act or omission taken in his or her judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable. Because amended § 1983 specifically reverses *Pulliam v. Allen*, 406 U.S. 522 (1984), a judge's absolute judicial immunity now bars any suit for injunctive relief that fails these two exceptions, even when the claim seeks only prospective injunctive relief.

Another amendment in this Act changed 42 U.S.C. § 1988 – the provision typically

entitling successful § 1983 claimants to attorney's fees – to exclude fee awards in any action brought against a judicial officer for an act or omission taken in his or her judicial capacity unless that action was clearly in excess of such officer's jurisdiction.  Courts have interpreted this standard to mean that, unless a judge acts in the clear absence of all jurisdiction, he or she will not be assessed fees in claims for monetary, injunctive, or declaratory relief.  *See, e.g., Carr v. Village of New York Mills*, 1998 U.S. Dist. LEXIS 5526 (D.N.Y. 1998), \*20.

Because there is no allegation Judge Grimslid violated a declaratory decree and because declaratory relief is theoretically available (although inappropriate in this case; *see part* F, below), absolute judicial immunity bars Knox's request for injunctive relief pursuant to 42 U.S.C. § 1983.

### F. Knox's claim against Judge Grimslid seeking declaratory relief is futile because there is not a case or controversy between the two.

Knox seeks declaratory relief against Judge Grimslid; however, Knox's attempt to get declaratory relief against Judge Grimslid in his individual capacity must fail. While declaratory relief is theoretically available against Judge Grimslid, it is inappropriate here because, as a litigant and presiding judge, there is no case or controversy between Knox and Judge Grimslid as a matter of law. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)(A "controversy" must exist between litigants for a case to proceed.); *see also In re Justices of Supreme Court of Puerto Rico*, 695 F.2d 17, 22 (1st Cir. 1982) (naming judges as defendants when they act only as neutral arbiters fails to state a claim for which relief can be granted).

"[I]t is well settled that declaratory judgment is not a proper vehicle for determining whether rights that were previously adjudicated were properly adjudicated."

*Davis v. Miraldi*, 2016-Ohio-868, 62 N.E.3d 572, ¶ 6 (9th Dist.), citing *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, P 44, 7 N.E.3d 1188. "A judge is not a party litigant in a proceeding in which he acts as judge and a litigant's disagreement with his decisions or dissatisfaction with his judicial performance does not give rise to a justiciable controversy between the complaining litigant and the judge." *Id.*, citing *Carter v. Walters*, 3d Dist. Paulding No. 11-88-23, 1990 Ohio App. LEXIS 1205, 1990 WL 35410, *2 (Mar. 22, 1990). "For direct and collateral attacks alike, declaratory judgment is simply not a part of the criminal appellate or postconviction review process." *Id.*, citing *Lingo*, 138 Ohio St.3d, 2014-Ohio-1052, at ¶44 (indicating that a declaratory judgment action cannot be used as a substitute for a petition for post-conviction relief, a petition for habeas corpus, or a motion to vacate).

In this case, Judge Grimslid is not Knox's adversary; he simply presided over the Underlying Case. Judge Grimslid acted solely in his adjudicatory role. Consequently, Knox is not entitled to have any declaration issued against Judge Grimslid based on how he ruled; his claim for declaratory relief against Judge Grimslid in his individual capacity therefore fails as a matter of law.

## IV.     Conclusion

For the foregoing reasons, Judge Gregory Grimslid respectfully requests all claims against him be dismissed, with prejudice.


Respectfully submitted,

22

*/s/ Cooper D. Bowen*
LINDA L. WOEBER (0039112)
COOPER D. BOWEN (0093054)
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio  45202
513.768.5239 / lwoeber@mojolaw.com
513.768-5242 / cbowen@mojolaw.com

*Counsel for Defendant Judge Gregory Grimslid*

## Certification Pursuant to Local Rule 7.1

I certify that this case has not been assigned to a track, and the above memorandum in support complies with the page limitations set forth in Local Rule 7.1.

*/s/ Cooper D. Bowen*
COOPER D. BOWEN (0093054)

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July, 2025, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I also certify that the foregoing was served by electronic and Ordinary U.S. Mail upon the following:

Andrew Lee Knox
P.O. Box 344
Russells Point, Ohio 43348
Knox.andrew19@gmail.com
*Plaintiff*

*/s/ Cooper D. Bowen*
COOPER D. BOWEN (0093054)

23